UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO. 3:26-cv-00301

JONATHAN DRUMMOND,

     Plaintiff,

vs.

SOUTHEASTERN GROCERS HOLDINGS, LLC,
d/b/a Harveys Supermarkets
a Delaware Limited Liability Company,

     Defendant.

_____/

## COMPLAINT, DEMAND FOR DECLARATORY RELIEF, AND PERMANENT INJUNCTIVE RELIEF REQUESTED

COMES NOW, Plaintiff JONATHAN DRUMMOND, (hereinafter "Plaintiff" or "DRUMMOND"), by and through his undersigned counsel, asserts the following claims against Defendant SOUTHEASTERN GROCERS HOLDINGS, LLC, d/b/a Harveys Supermarkets (hereinafter "SOUTHEASTERN GROCERS" or "Defendant"), a Delaware Limited Liability Company, and demands for declaratory relief and requests a permanent injunction, as follows.

1.    Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read Website content using his computer. Plaintiff uses the terms

"blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision. Others have no vision.

2.      Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind.

3.      Plaintiff brings this civil rights action against Defendant for its failure to design, construct, maintain, and operate its Website to be fully accessible to and independently usable by Plaintiff. Defendant's denial of full and equal access to its Website, and therefore denial of its goods and services offered thereby, is a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA").

4.      Defendant, SOUTHEASTERN GROCERS HOLDINGS, LLC, operates the harveyssupermarkets.com, supermarket online store across the United States. This Website constitutes a place of public accommodation. Defendant's Website provides consumers with access to an array of goods and services including fresh produce and groceries, which Defendant offers in connection with its physical locations. Yet, harveyssupermarkets.com contains significant access barriers, such as incompatibility with screen reading software, that make it difficult if not impossible for blind and visually-impaired customers to use the Website. In fact, the access barriers make it

impossible for blind and visually-impaired users to enjoy and learn about the services at harveyssupermarkets.com prior to entering Defendant's physical locations.

5.    Consumers may use Defendant's services and access other content at https://harveyssupermarkets.com/, the Website Defendant owns, operates, and controls. Another function of the Website is to provide the public with information on SOUTHEASTERN GROCERS's physical locations, hours of operation, and contact details. The Website also allows users to explore a wide selection of fresh groceries, household essentials, and daily deals at Harveys Supermarkets. Customers can browse a variety of products, including fresh produce, meats, dairy, pantry staples, and beverages, place online orders for pickup or delivery, download mobile application for a quick and efficient shopping experience, join the rewards program to earn points and access exclusive offers, learn about career opportunities, and connect with Harveys Supermarkets on social media platforms.

6.    Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the ADA. Such discrimination includes barriers to full integration, independent living and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons.

7.    Defendant's Website, https://harveyssupermarkets.com/ (the "Website"), is

not equally accessible to blind and visually impaired consumers, as required by the ADA, because it is not compatible with screen reader software specifically designed for the blind and visually-impaired to access the Website. Plaintiff seeks a permanent injunction to cause a change in Defendant's corporate policies, practices, and procedures so that Defendant's Website will become and remain accessible to blind and visually-impaired consumers.

8.    The blind have a greater need than the sighted to have access to various websites to compare merchandise, benefits and prices, to get more information about the companies, their locations and hours of operation. The lack of an accessible website deters blind people from visiting Defendant's physical locations and enjoying the unique services that it provides to the public.

9.    By failing to make its Website available in a manner compatible with computer screen reader programs, Defendant, a public accommodation subject to Title III, deprives blind and visually-impaired individuals the benefits of its online goods, content, and services—all benefits it affords nondisabled individuals—thereby increasing the sense of isolation and stigma among these Americans that Title III was meant to redress.

## JURISDICTION AND VENUE

10.    This Court has subject-matter jurisdiction over this action under 28 U.S.C.

§ 1331 and 42 U.S.C. § 12182, as Plaintiff's claims arise under Title III of the ADA, 42

U.S.C. § 12182, *et seq*.

11.    Venue is proper in this district under 28 U.S.C. § 1391(b)(1–2) because

Defendant conducts and continues to conduct a substantial and significant amount of

business in this District, and a substantial portion of the conduct complained of herein

occurred in this District because Plaintiff attempted to utilize the subject Website within

this Judicial District.

12.    Defendant is subject to personal jurisdiction in this District. Defendant has

been and is committing the acts or omissions alleged herein in the Middle District of

Florida that caused injury and violated rights the ADA prescribes to Plaintiff. A

substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this

District: Plaintiff has been denied the full use and enjoyment of the facilities, goods and

services offered to the general public, on Defendant's Website in Duval County. These

access barriers that Plaintiff encountered have caused a denial of Plaintiff's full and equal

access, and now deter Plaintiff on a regular basis from accessing the Defendant's Website

in the future.

13.    The United States Department of Justice Civil Rights Division has recently

provided "Guidance on Web Accessibility and the ADA.", which states in part, "the

Department has consistently taken the position that the ADA's requirements apply to all

the goods, services, privileges, or activities offered by public accommodations, including those offered on the web."

14.    This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201–02.

15.    This lawsuit is aimed at providing legally blind users like the Plaintiff a full and equal experience.

## THE PARTIES

16.    Plaintiff JONATHAN DRUMMOND, at all relevant times, is and was a resident of Duval County, Florida.

17.    Plaintiff is a blind, visually-impaired handicapped person suffering from optical nerve atrophy as a result of retinoblastoma, and a member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1–2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101, *et seq*.

18.    Defendant is, and at all relevant times was, doing business in this jurisdiction.

19.    Defendant SOUTHEASTERN GROCERS HOLDINGS, LLC, is and was, at all relevant times herein, a Delaware Limited Liability Company with its principal place of business located at 1200 North Kirk Rd, Batavia, IL 60510. Defendant operates the harveyssupermarkets.com online store and advertises, markets, and operates in the

State of Florida and throughout the United States.

20.     Defendant's Website, and its goods and services offered thereupon, is a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).

## **<u>STANDING</u>**

21.     Plaintiff JONATHAN DRUMMOND is a blind, visually-impaired handicapped person and a member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1–2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101, *et seq*.

22.     SOUTHEASTERN GROCERS HOLDINGS, LLC provides to the public a Website known as harveyssupermarkets.com, which provides consumers access to fresh produce and groceries. Consumers across the United States use Defendant's Website to find the information about store locations and hours of operation, explore a wide selection of fresh groceries, household essentials, and daily deals at Harveys Supermarkets, including fresh produce, meats, dairy, pantry staples, and beverages. The website also allows visitors to place online orders for pickup or delivery, join the rewards program to earn points and access exclusive offers, learn about career opportunities, and connect with Harveys Supermarkets on social media platforms.

23.     Defendant's Website, https://harveyssupermarkets.com/, is directly

integrated with and operates as a gateway to Defendant's brick-and-mortar store located at 201 West 48th Street, Jacksonville, FL 32208. The Website is the primary means by which customers, including Plaintiff, can review available items, determine pricing and make an online purchase prior to visiting the Jacksonville supermarket.

24.    Plaintiff has been denied the full enjoyment of the facilities, goods and services of harveyssupermarkets.com, as well as deprived of the opportunity to enjoy the facilities, goods and services of Defendant's brick and mortar locations, as a result of accessibility barriers on harveyssupermarkets.com.

25.    Plaintiff encountered multiple access barriers that denied him full and equal access to the facilities, goods and services offered by Defendant to the public. Plaintiff was thus, among other things, unable to: learn about store locations, hours and contact information, determine available goods and services and other information from the Website. These access barriers prevented Plaintiff from accessing the Defendant's physical location to patronize it.

26.    Plaintiff is a visually-impaired and legally blind person, who cannot use a computer without the assistance of screen-reading software. Plaintiff is, however, a proficient NVDA screen-reader user and uses it to access the Internet. On multiple occasions, and most recently on December 26, 2025, Plaintiff has visited the Website, using a screen-reader. DRUMMOND tried to make a purchase, however, Plaintiff encountered multiple accessibility barriers. These barriers prevented Plaintiff from

accessing the goods and services from Defendant's locations because of the incompatibility of the Defendant's Website with Plaintiff's screen-reading software. Despite these barriers, Plaintiff plans to visit Defendant's physical location at 201 West 48th Street, Jacksonville, FL 32208 within the next nine months because of the store's appealing product offerings and the opportunity to explore and purchase items in person.

27.    Unfortunately, Plaintiff was unable to complete an online purchase due to the inaccessibility of Defendant's Website, because it was not compatible with his screen reading software, and thus prevented from patronizing Defendant's store located at 201 West 48th Street, Jacksonville, FL 32208.

28.    While researching grocery shopping options in his area, Plaintiff decided to visit Harveys Supermarkets' website, a renowned local grocery retail chain. Interested in browsing products and placing an order for deli meat, Plaintiff proceeded to explore the website and its range of products and services. However, while navigating the site using screen-reading software, he encountered significant accessibility barriers that impeded his ability to fully access and utilize the website. As he attempted to move through the menus and access important information, the sudden pop-up interrupted his workflow, forcing him to pause and understand how to close or bypass it. Additionally, the sub-menu items within the navigation menu were not accessible via keyboard navigation. As a result, the Plaintiff was prevented from having full access to important site features and content available through the sub-menu. Furthermore, when he attempted to select a

product category within the filters, the keyboard focus moved away from the section and jumped to the bottom of the page. This disoriented him and made him unaware of the focus location. He also could not select a delivery date on the Choose Time page, as the time buttons did not announce whether they were activated or not. Despite these barriers, Plaintiff remains interested in visiting Harveys Supermarkets' physical location, located at 201 West 48th Street, Jacksonville, FL 32208, because of the store's wide selection of fresh groceries and household essentials. Plaintiff is interested in shopping in person to purchase fresh produce, meats, and pantry staples, as well as to take advantage of the store's weekly specials and in-store savings opportunities. Due to the Website's accessibility barriers, including changing of content without advance warning, unclear labels for interactive elements, inaccessible drop-down menus, Plaintiff was unable to make an online order at the Jacksonville supermarket.

29.    Due to Defendant's failure to build the Website in a manner that is compatible with screen access programs, Plaintiff was unable to understand and properly interact with the Website and was thus denied the benefit of making an online purchase from the Website connected to Defendant's store. Defendant's Website's incompatibility with Plaintiff's screen-reader software prevents him from patronizing the Defendant's physical location because of the perceived feelings of animosity towards blind people like Plaintiff.

30.    The fact that Plaintiff could not communicate with or within the Website left

his feeling excluded, frustrated and humiliated and gave him a sense of isolation and segregation as he being unable to participate in the same online experience, with the same access to sales, services, discounts and promotions, as provided at the Website and for use in the physical locations as the non-visually disabled public. These barriers, and the feelings it created, prevented the Plaintiff from accessing the Defendant's physical location to patronize it via its' Website.

31.     The law requires that the Defendant reasonably accommodate Plaintiff's disabilities by removing these existing access barriers, such as being WCAG 2.2 AA compliant to allow screen reading software to function properly and allow blind and visually-impaired people to access the Website.

32.     These access barriers on Defendant's Website have prevented Plaintiff from visiting Defendant's physical locations and enjoying them equal to sighted individuals because: Plaintiff was unable to find the locations and hours of operation of Defendant's locations on its Website and other important information, preventing Plaintiff from visiting the locations to take advantage of the services that it provides to the public.

33.     Plaintiff has been, and in absence of an injunction will continue to be injured by Defendant's failure to provide its online content and services in a manner that is compatible with screen reader technology.

34.     Because of Defendant's denial of full and equal access to and enjoyment of

the good, benefits and services of the Website, Plaintiff has suffered an injury in fact due to his inability of making an online order, which is a concrete and particularized injury, and is a direct result of Defendant's failure to make its' Website compatible with Plaintiff's screen reading software.

35.     Plaintiff intends to patronize Defendant's supermarket located at 201 West 48th Street, Jacksonville, FL 32208 in the immediate future. Plaintiff lives in Jacksonville and plans to visit the store within the next nine months to make a purchase of fresh produce and groceries for consumption. Plaintiff's intent to visit is genuine and imminent, but his ability to do so on equal terms is presently impeded by Defendant's inaccessible Website, which prevents him from independently reviewing offerings and confirming pricing in advance of his visit.

36.     Despite this direct harm and frustration, Plaintiff intends to attempt to access the Website in the future to make an online purchase on the Website with the intention of patronizing Defendant's physical location at .

## NATURE OF ACTION

37.     The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

38.    In today's tech-savvy world, blind and visually impaired people have the ability to access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen or displays the content on a refreshable Braille display. This technology is known as screen-reading software. Screen-reading software is currently the only method a blind or visually-impaired person may use to independently access the internet. Unless websites are designed to be read by screen-reading software, blind and visually- impaired persons are unable to fully access websites, and the information, products, goods and contained thereon.

39.    Blind and visually-impaired users of Windows operating system-enabled computers and devices have several screens reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately. NonVisual Desktop Access, otherwise known as "NVDA", is currently one of the most popular, and downloaded screen-reading software programs available for a Windows computer.

40.    For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access the same content or access to the goods and services otherwise available to sighted users.

41.    The international website standards organization, the World Wide Web

Consortium, known throughout the world as W3C, has published version 2.2 of the Web Content Accessibility Guidelines ("WCAG 2.2"). WCAG 2.2 are well-established guidelines for making websites accessible to blind and visually-impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure their websites are accessible.

42.    Non-compliant websites pose common access barriers to blind and visually-impaired persons. Common barriers encountered by blind and visually impaired persons include, but are not limited to, the following:

a.    A text equivalent for every non-text element is not provided;

b.    Title frames with text are not provided for identification and navigation;

c.    Equivalent text is not provided when using scripts;

d.    Forms with the same information and functionality as for sighted persons are not provided;

e.    Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

f.    Text cannot be resized without assistive technology up to 200% without losing content or functionality;

g.    If the content enforces a time limit, the user is not able to extend, adjust or disable it;

h.  Web pages do not have titles that describe the topic or purpose;

i.  The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

j.  One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

k.  The default human language of each web page cannot be programmatically determined;

l.  When a component receives focus, it may initiate a change in context;

m.  Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component;

n.  Labels or instructions are not provided when content requires user input, which include captcha prompts that require the user to verify that he or she is not a robot;

o.  In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to their specifications, elements may contain duplicate attributes, and/or any IDs are not unique;

p.  Inaccessible Portable Document Format (PDFs); and,

q.  The name and role of all User Interface elements cannot be

programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

43.    Websites have features and content that are modified on a daily, and in some instances hourly basis and a one time "fix" to an inaccessible digital platform will not cause the digital platform to remain accessible without a corresponding in change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to website technologies have been changes in a meaningful manner that will cause the website to remain accessible, the website must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

## **STATEMENT OF FACTS**

44. Defendant is a company that owns and operates https://harveyssupermarkets.com/ (its "Website"), offering features which should allow all consumers to access the goods and services offered by Defendant. This Website forms a nexus between online services and the Defendants' brick and mortar place of public accommodation located at 201 W 48th St, Jacksonville, FL 32208 because it allows a party to make an online order and it contains the phone number and address of the location.

45.    Plaintiff is a visually-impaired and legally blind person, who cannot use a computer without the assistance of screen-reading software. Plaintiff is, however, a proficient NVDA screen-reader user and uses it to access the Internet. Plaintiff visited the Website on December 26, 2025 using a screen-reader.

46.    Plaintiff is a visually-impaired and legally blind person, who cannot use a computer without the assistance of screen-reading software. Plaintiff is a proficient NVDA screen-reader user and uses it to access the Internet. On December 26, 2025, Plaintiff has visited the Website, using a screen-reader. Plaintiff tried to make a purchase, however, Plaintiff encountered multiple accessibility barriers. These barriers prevented Plaintiff from accessing the goods and services from Defendant's locations because of the incompatibility of the Defendant's Website with Plaintiff's screen-reading software. Despite these barriers, Plaintiff plans to visit Defendant's physical location at  within the next nine months, because of the store's appealing product offerings and the opportunity to view and purchase items in person at the store.

47.    As a result of these accessibility barriers, the Website operated as an intangible barrier that prevented Plaintiff from fully accessing and enjoying the goods and services of Defendant's Jacksonville supermarket on equal terms with sighted customers. Without the ability to independently navigate the Website, review offerings, confirm pricing, and complete an online purchase, Plaintiff was effectively excluded from meaningful access to Defendant's physical location and deterred from patronizing the

store.

48.    The Website contains access barriers that prevent free and full use by the Plaintiff using keyboards and screen reading software. These barriers include but are not limited to: inaccurate heading hierarchy, ambiguous link texts, changing of content without advance warning, unclear labels for interactive elements, inaccessible drop-down menus.

49.    Among other accessibility issues encountered by Plaintiff when visiting the Defendant`s Website are the following:

a) Heading hierarchy was not properly defined, and there were missing heading levels. As a result, quick navigation through headings on the website did not help Plaintiff effectively find the content and understand the logical structure of the home page;

b) Sub-menu elements with drop-down menus were inaccessible via keyboard. Plaintiff could not interact with sub-menus using "tab" or "arrow" keys. The website had device-specific functionality, like mouse-dependency, making it inaccessible to legally blind users;

c) The website did not preserve correct keyboard tabbing (reading) order. Plaintiff perceived different version of the web page, and its layout had incorrect sequence and order of interactive elements;

d) d) Several links had ambiguous texts that were unclear to Plaintiff. Lack of detailed description of the link target and destination page made it difficult for Plaintiff to perceive their purpose;

e) e) Plaintiff was disoriented when the automatic pop-up window appeared on the web page. Plaintiff, as a legally blind user, had significant difficulty knowing when automatic visual context change had occurred,

such as a new window popping up;

f) f) Plaintiff tried to follow the links from the website and received no prior warning that the links opened new windows. As a result, Plaintiff unsuccessfully tried to use the "Back" function of the browser to go to the previous page and became disoriented;

g) Interactive elements on the web page had inappropriate and non-descriptive name. Plaintiff could not identify the purpose of the interactive element;

h) The interactive element on the web page did not announce its role and as a result, Plaintiff could not identify the purpose of the interactive element;

i) Plaintiff was confused by the announcement of the constant update of the moving content, caused by the "aria-live" attribute of the carousel region. Plaintiff was disoriented and perceived the unexpected announcement as a change in keyboard focus;

j) In an attempt to add the selected item to cart, a confirmation message was not announced by the screen reader software. Plaintiff was not informed about the successful addition of the product;

50.    These access barriers effectively denied Plaintiff the ability to use and enjoy Defendant's Website the same way sighted individuals do or access the opening times, goods, and services of the physical location.

51.    Plaintiff intends to patronize Defendant's store in the next nine months if the Website is made accessible. Plaintiff lives in Jacksonville and plans to visit the store within the next nine months to purchase fresh produce and groceries. Plaintiff's inability to independently access the Website continues to prevent him from planning and

completing such visits. Absent remediation of the Website's accessibility barriers, Plaintiff faces a real and immediate threat of continued discrimination and exclusion from Defendant's physical location because the lack of compatibility prevents him from making an online purchase or acquiring the location or operational times of the Defendant's physical location.

52.   It is, upon information and belief, Defendant's policy and practice to deny Plaintiff, along with other blind or visually-impaired users, access to Defendant's Website, and to therefore specifically deny the goods and services that are offered to the general public. Due to Defendant's failure and refusal to remove access barriers to its Website, Plaintiff has been and is still being denied equal access to Defendant's Website, as well as the physical location, and the numerous goods and services and benefits offered to the public through the Website.

53.   Due to the inaccessibility of Defendant's Website, Plaintiff, who needs a screen-reader, cannot fully and equally use or enjoy the facilities, products, and services Defendant offers to the public on its Website. The access barriers Plaintiff encountered have caused a denial of Plaintiff's full and equal access in the past, and now deter Plaintiff on a regular basis from equal access to the Website. The inaccessibility of Defendant's Website amount to an intangible barrier to its physical locations because it prevents Plaintiff from acquiring the information related to its locations, operating hours, or prevented him from making an online purchase.

54.    Plaintiff intends to patronize Defendant's supermarket within the next nine months and has concrete plans to do so. Plaintiff attempted to use Defendant's Website to facilitate this visit, including reviewing available offerings and making an online purchase, but was unable to do so due to accessibility barriers. These barriers prevented Plaintiff from accessing Defendant's physical location and create a real and immediate threat of continued discrimination.

55.    If the Website were equally accessible to all, Plaintiff could independently navigate the Website and complete a desired transaction as sighted individuals do.

56.    Through his attempts to use the Website, Plaintiff has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired people.

57.    Because simple compliance with the WCAG 2.2 Guidelines would provide Plaintiff with equal access to the Website, Plaintiff alleges that Defendant has engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

   a.    Constructing and maintaining a Website that is inaccessible to visually-impaired individuals, including Plaintiff;

   b.    Failure to construct and maintain a Website that is sufficiently intuitive so as to be equally accessible to visually impaired individuals, including

Plaintiff; and,

c.    Failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers, such as Plaintiff.

58.    Defendant therefore uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

59.    The ADA expressly contemplates the injunctive relief that Plaintiff seeks in this action. In relevant part, the ADA requires:

> In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy . . .
> 42 U.S.C. § 12188(a)(2).

60.    Because Defendant's Website has never been equally accessible, and because Defendant lacks a corporate policy that is reasonably calculated to cause its Website to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring Defendant to retain a qualified consultant acceptable to Plaintiff ("Agreed Upon Consultant") to assist Defendant to comply with WCAG 2.2 guidelines for Defendant's Website. Plaintiff seeks that this permanent injunction requires Defendant to cooperate with the Agreed Upon Consultant to:

a.  Train Defendant's employees and agents who develop the Website on accessibility compliance under the WCAG 2.2 guidelines;

b.  Regularly check the accessibility of the Website under the WCAG 2.2 guidelines;

c.  Regularly test user accessibility by blind or vision-impaired persons to ensure that Defendant's Website complies under the WCAG 2.2 guidelines; and,

d.  Develop an accessibility policy that is clearly disclosed on Defendant's Websites, with contact information for users to report accessibility- related problems.

61.  Although Defendant may currently have centralized policies regarding maintaining and operating its Website, Defendant lacks a plan and policy reasonably calculated to make them fully and equally accessible to, and independently usable by, blind and other visually-impaired consumers.

62.  Defendant has, upon information and belief, invested substantial sums in developing and maintaining their Website and has generated significant revenue from the Website. These amounts are far greater than the associated cost of making its Website equally accessible to visually impaired customers.

63.  Without injunctive relief, Plaintiff will continue to be unable to independently use the Website, or access Defendant's physical location, violating his

rights under the ADA.

## FIRST CAUSE OF ACTION:
## VIOLATIONS OF THE ADA, 42 U.S.C. § 12182, *et seq.*

Plaintiff realleges the allegations contained in paragraphs One through Sixty-Three

as if set forth herein.

64.    Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101, *et seq.*, provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.
42 U.S.C. § 12182(a).

65.    Defendant's Website is a public accommodation within the definition of

Title III of the ADA, 42 U.S.C. § 12181(7). The Website is a service that is offered to the

general public, and as such, must be equally accessible to all potential consumers.

66.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful

discrimination to deny individuals with disabilities the opportunity to participate in or

benefit from the products, services, facilities, privileges, advantages, or accommodations

of an entity. *See* 42 U.S.C. § 12182(b)(1)(A)(i).

67.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful

discrimination to deny individuals with disabilities an opportunity to participate in or

benefit from the products, services, facilities, privileges, advantages, or accommodation,

which is equal to the opportunities afforded to other individuals. *See* 42 U.S.C. §

12182(b)(1)(A)(ii).

68.    Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination

also includes, among other things:

> [A] failure to make reasonable modifications in policies, practices, or procedures,
> when such modifications are necessary to afford such goods, services, facilities,
> privileges, advantages, or accommodations to individuals with disabilities, unless
> the entity can demonstrate that making such modifications would fundamentally
> alter the nature of such goods, services, facilities, privileges, advantages or
> accommodations; and a failure to take such steps as may be necessary to ensure
> that no individual with a disability is excluded, denied services, segregated or
> otherwise treated differently than other individuals because of the absence of
> auxiliary aids and services, unless the entity can demonstrate that taking such
> steps would fundamentally alter the nature of the good, service, facility,
> privilege, advantage, or accommodation being offered or would result in an
> undue burden.
> 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

69.    The acts alleged herein constitute violations of Title III of the ADA, and the

regulations promulgated thereunder. Plaintiff, who is a member of a protected class of

persons under the ADA, has a physical disability that substantially limits the major life

activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore,

Plaintiff has been denied full and equal access to the Website, has not been provided

services that are provided to other patrons who are not disabled, and has been provided

services that are inferior to the services provided to non-disabled persons. Defendant has

failed to take any prompt and equitable steps to remedy its discriminatory conduct. These

violations are ongoing.

70.    Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff, requests relief as set forth below.

## SECOND CAUSE OF ACTION:
## DECLARATORY RELIEF

Plaintiff realleges the allegations contained in paragraphs One through Sixty-Three as if set forth herein.

71.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that its Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of its Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*.

72.    A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court grant the following relief:

a.  A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*., and the laws of Florida;

b.  A preliminary and permanent injunction requiring Defendant to take all the

steps necessary to make its Website fully compliant with the requirements set forth in the ADA, and its implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c.  A declaration that Defendant owns, maintains and/or operates its Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, and the laws of Florida;

d.  Payment of nominal damages;

e.  Pre- and post-judgment interest;

f.  An award of costs and expenses of this action together with reasonable attorneys' fees and expert fees; and

g.  Such other and further relief as this Court deems just and proper.

Dated: Thursday, February 12, 2026

**ALEKSANDRA KRAVETS, ESQ. P.A.**
*Counsel for Plaintiff*
865 SW 113 Lane
Pembroke Pines, FL 33025
Phone: 347-268-9533
Email: ak@akesqpa.com

By: _____ */s/ Aleksandra Kravets, Esq.*
 Aleksandra Kravets, Esq.
 FBN: 120562